UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| TECOSSL, INC., | ) |
| Plaintiff, | ) Civil No. 5:19-cv-00043-GFVT |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| AVID LABS, LLC, *et al.*, | ) **AND** |
| | ) **ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Avid Labs, LLC's Motion for Summary Judgment. [R. 128.] Avid seeks summary judgment on all of Plaintiff Tecossl, Inc.'s ("Teco") remaining claims against Avid. *Id*. The briefing period has concluded, and the matter is now ripe for review. For the reasons that follow, Avid's motion will be **GRANTED**.

I

In 2015, Teco, a company that sells LED surface inspection lighting systems for paint inspection booths, approached Avid to assist with a lighting project for Toyota Motor Manufacturing of Kentucky. [R. 33 and R. 128.] On December 11, 2015, Teco and Avid entered into a Confidential Disclosure Agreement ("NDA") whereby Avid, designated as the "Discloser," agreed to provide "confidential information" relating to "LED Inspection Lighting Technology" to Teco, who was identified as the "Recipient." [R. 62-1]. Darrel Thornberry, Teco's President, and Joel Nichols, Avid's Chief Executive, both signed the NDA.

Soon thereafter, on March 18, 2016, Avid filed provisional patent application No. 62/310,294 for a paint inspection lighting system. Then, just under a year later on March 16,

2017, Avid filed a utility patent application on the paint inspection lighting system. This utility patent application was numbered 15/460,929. Eventually, the '929 patent application ripened, and on December 31, 2019, U.S. Patent No. 10,520,447 was issued to Avid by the United States Patent and Trademark Office ("USPTO").

Before the '929 patent application fully ripened into the '447 patent, however, Teco filed its original complaint against Avid and two other defendants. [R. 1.][1] Following months of back-and-forth pleading, Teco moved to amend its original complaint [R. 31], which the Court allowed.[2] [R. 32.] In its amended complaint, which was filed on September 24, 2019, Teco alleged thirteen causes of action against Avid and the two other original defendants. [R. 33.] After more back-and-forth pleading between the parties, the case sat virtually dormant for almost a year and a half until Avid moved to dismiss for lack of prosecution.[3] After Judge Hood denied Avid's motion to dismiss for lack of prosecution [R. 58], Avid filed a counterclaim against Teco alleging that Teco breached the NDA and infringed upon Avid's '447 patent.[4] [R. 62.] Since then, Teco has relieved Avid's co-defendants, and dismissed several of the claims alleged in its amended complaint. [*See* R. 56, R. 86, R. 110, R. 114, R. 177, and R. 179.]

Now, all that remains of Teco's amended complaint are three claims against Avid. [*See* R. 179.] Count 5 of Teco's amended complaint seeks reformation of the NDA between Teco and Avid, and alleges that, under a reformed NDA, Avid is in breach. [R. 33.] Count 8 alleges that Avid tortiously interfered with Teco's prospective business relationships. *Id*. And Count 9 seeks declaratory judgment that Avid committed inequitable conduct, and that any claims that issue

---

[1] Filed February 12, 2019.
[2] The Court finds it worth noting for clarity's sake that this matter was originally assigned to Judge Joseph Hood. Not until October 14, 2022 was this case reassigned to this Court's docket. [*See* R. 89.]
[3] This dormant period was apparently caused by the absence in the record of a scheduling order.
[4] Teco has filed a Motion for Partial Summary Judgment on Avid's counterclaims. [R. 129.] The Court acknowledges that the scope of this Memorandum Order and Opinion extends only to Avid's Motion for Summary Judgment on Teco's Amended Complaint.

2

from Avid's '929 patent application are unenforceable. *Id*. Avid moves for summary judgment on all three counts of Teco's amended complaint.[5]

## II

### A

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. Of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

---

[5] Avid also moved for summary judgment on Counts 3, 4, 6, 7, 10, 11, 12, and 13 of Teco's Amended Complaint. [R. 128.] In its reply, Teco failed to provide support for any of those counts except for Count 3. [*See* R. 136.] Teco subsequently filed a notice of withdrawal of Counts 3, 4, 6, 7, 10, 11, 12, and 13. [R. 177.] The Court ordered the dismissal of each of those claims pursuant to Federal Rule of Civil Procedure 41(a)(2). [R. 179.] Accordingly, the Court has only Counts 5, 8, and 9 of Teco's amended complaint to consider.

matter of law*.*" *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc*., 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

**B**

The Court turns first to Avid's motion for summary judgment on Teco's requests for declaratory judgment related to a Non-Disclosure Agreement between Teco and Avid. Count 5 of Teco's amended complaint asks the Court to amend a Non-Disclosure Agreement between Teco and Avid and to declare that Avid breached that contract. [R. 33 at 12-13.] According to Teco, it entered into an NDA with Avid where Avid agreed not to use any confidential information that it received from Teco except for the purposes of sub-contracting, engineering and support services. [*See* R. 33 at 13 and R. 1-1.] This NDA, however, lists Teco as the recipient and Avid as the discloser—meaning that, as the contract is currently written, Teco owes a duty of confidentiality to Avid, and not the other way around. Teco alleges that its founder Darrel Thornberry downloaded this contract form from the internet and inadvertently mixed up the parties' roles. Teco seeks a declaration to amend this "scrivener's error" within the NDA, which would alter the legal relationship of the parties—one where Avid would owe a duty of confidentiality to Teco. Teco further alleges that Avid, by developing a T-slot framework for LED lighting and directly soliciting Teco's customers, breached that duty under the NDA.

In support of its motion for summary judgment on this count, Avid challenges the validity and enforceability of the NDA, citing Teco's lack of proof that a valid and enforceable

contract actually exists.[6] [R. 128 at 10-11.] Avid further argues that, assuming a contract exists, Teco has failed to provide any "context" to support Teco's position that the NDA should be amended to reverse the parties' roles. *Id*. at 11. And lastly, Avid contends that, even if the Court is inclined to rewrite the contract, Teco has not provided any evidence that Avid breached such a revised contract. [R. 142 at 4.]

"A Court has the power to reform a written agreement 'where, due to a mutual mistake by the parties, the instrument as drawn does not accurately express the true intention or agreement of the parties.'" *Pharm. Corp. of Am. v. Premier Healthcare Mgmt., LLC*, No. 3:18-cv-754-RGJ, 2019 U.S. Dist. LEXIS 205278 at *9 (W.D. Ky. Nov. 25, 2019) (quoting *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 703 (Ky. 2014)). Before a court can exercise this power, however, "the party seeking reformation must prove, beyond a reasonable controversy by clear and convincing evidence, that the mistake was mutual and that the parties had actually agreed upon terms different from those expressed in the written instrument." *Id*. (internal quotations and citation omitted). "A mutual mistake in respect to reformation is one in which both parties participate, each laboring under the same misconception." *Karrick v. Wells*, 307 S.W.2d 929, 931 (Ky. 1957).

"[T]he mistake of a scrivener in drafting a document may be reformed based upon parol evidence." *Cadleway Properties, Inc. v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280, 287 (Ky. Ct. App. 2010). "When one party maintains that there has been no mistake and that he has

---

[6] Teco provides a copy of the NDA as Exhibit 1, which is attached to its original complaint. [R. 1-1.] Although Avid challenges the validity of the contract, it does so in a perfunctory manner, limiting its analysis, or lack thereof, to a single sentence. Moreover, Avid seeks in its counterclaim to enforce the NDA, alleging that Teco breached the contract. [*See* R. 62.] Thus, Avid essentially admits to the validity of the contract. As this Court's esteemed fictitious colleague Judge Samuel L. White once explained, "What's good for the goose is good for the gander." *See* MIDNIGHT IN THE GARDEN OF GOOD AND EVIL (Malpaso Productions & Silver Pictures 1997). For these reasons, the Court finds that there is no actual substantive challenge to the NDA's validity and, therefore, accepts that a valid and enforceable contract exists.

never expressed assent to any agreement other than the one stated in writing, the testimony and corroborating evidence of the party seeking reformation must be *extremely strong* in order to overcome the specific terms of the contract." *Spratt v. Carroll*, 399 S.W.2d 291, 293 (Ky. 1966) (emphasis added). The Court "will not reform an executed instrument upon a mere preponderance of the proof . . . ." *Ins. Co. of N. Am. v. Evans*, 17 S.W.2d 711, 712 (1929). In other words, "[w]here the evidence of mutual mistake in the preparation of a written contract is conflicting, and there is any doubt as to the right of reformation, it will be denied." *Hayes v. Hudson*, 273 S.W. 524, 525 (1925). "The sanctity of contracts as written should not be lightly set aside." *Francis v. Domino*, 64 S.W.2d 571, 573 (1933).

Here, the Court finds doubt as to Teco's right to reformation. In support of its allegations that Darrel Thornberry committed a scrivener's error, Teco proffers four pieces of evidence: (1) an email sent from Darrel Thornberry to a Lexington attorney about non-disclosure agreements; (2) internal Avid emails; (3) emails between Teco and Avid about sourcing a higher CRI LED light; and (4) a Declaration by Darrel Thornberry. The Court first turns to Darrel Thornberry's email to Lexington attorney Lucy Ferguson.

Exhibit 7 attached to Teco's response is an email from Teco's President Darrel Thornberry to Lexington attorney Lucy Ferguson. [*See* R. 136-7.] This email purports to show Darrel Thornberry's desire for an "Iron Clad Non-Disclosure Agreement to prevent companies and their personal [sic] to profit off [Teco's] ideas." Thus, the inference in Teco's favor is that Darrel Thornbury must have desired the Teco-Avid NDA to protect Teco—in other words, to prevent Avid from profiting off of Teco's ideas. But Mr. Thornberry's email fails to support that inference for multiple reasons. First, this email is hearsay evidence as defined by Rule 801(c) because it is being offered to prove the truth of the matter asserted—that is, Darrel Thornberry's

6

want for an NDA that protects Teco. *See* Fed. R. Evid. 801(c). Because this email would be inadmissible pursuant to Rule 802, the Court cannot rely on it when ruling on a summary judgment motion. *See Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (a trial court cannot rely on inadmissible hearsay when ruling on summary judgment).

Second, even if the Court could consider this particular email, the inference Teco asks the Court to make is not reasonable. *See Logan*, 259 F. 3d at 566 (the Court must draw all *reasonable* inferences in the non-moving party's favor) (emphasis added). For starters, the email was sent on February 12, 2016, which is *after* the December 11, 2015 execution date of the Teco-Avid NDA. Mr. Thornberry acknowledges in the email that he had already signed the NDA with Avid. Thus, any evidence of what Mr. Thornberry intended the NDA to mean is *ex-post* and does not reflect what his intentions were at the time he actually entered into the contract. Further, Mr. Thornberry refers to a general desire for an "Iron Clad Non-Disclosure Agreement" to prevent other companies from profiting off of Teco's ideas, and mentions that he had "another vendor prior to AVID" that allegedly "took off" and profited from Thornberry's idea and Teco's established market. The Court understands an inference drawn in Teco's favor suggests that both Teco and Avid knew that Teco was the protected party. But again, this email does little to aid the Court in determining what the intentions of *both* parties were when the Teco-Avid NDA was executed because it only reflects Mr. Thornberry's *ex-post* desires. Hence, an inference drawn in Teco's favor, which would be that both Teco *and* Avid understood Teco to be the protected party, is a stretch too much. While it may be the case that Mr. Thornberry intended Teco to be protected by the NDA he entered with Avid, what this email accurately reflects is *his* desire for a *future* NDA to protect Teco. Ultimately, the Court finds that an inference from this email that a *mutual* mistake exists in a *previously* executed contract is

7

unreasonable.

The internal Avid emails do not relieve the Court's doubts as to reformation either. [*See* R. 136-6.] Teco highlights a sentence where Avid's Business Operations Manager points out that "Darrel [Thornberry] doesn't understand that he is the recipient and we are the discloser." Even assuming the admissibility of this particular email as non-hearsay under Rule 801(d)(2), this particular evidence does little to prove that Teco and Avid agreed to different terms. If anything, the email actually cuts against Teco's action for reformation because it demonstrates Avid's understanding that, pursuant to the NDA, Teco truly is the recipient and Avid truly is the discloser. The inference in Teco's favor, however, is that Avid understood that Teco was the discloser and that Avid was the recipient. That inference would create a genuine dispute of material fact as to whom the NDA was meant to protect.

Teco then relies on another email chain, one between Teco and Avid, to support its argument that the word "Vendor" as used in the NDA can only mean Avid because "Vendor is synonymous with supplier." [*See* R. 136-4.] According to Teco, these emails demonstrate that Teco approached Avid to find and supply a higher CRI LED light, and that because Teco was not supplying Avid, "Vendor" would be an entirely meaningless designation for Teco in this particular agreement. Again, assuming that the particular email sent by Avid is non-hearsay under Rule 801(d)(2), the email does little to support Teco's position. First, the email sent by Avid is dated July 10, 2015. Unlike the emails considered above, this particular email was sent *before* the NDA's execution date of December 11, 2015. So, it may be the case, as Teco alleges, that this email shows that Teco asked Avid to supply a higher CRI LED Light. But all that does is prove that Avid was supplying Teco one particular item six months before the NDA was executed. It does not prove that Avid was intended to be a "Vendor" *after* December 11, 2015,

8

or in the context of the NDA.  But again, at the summary judgment stage, the Court must give the inferential nod to Teco.  The inference, then, is that Avid was the vendor because Avid had previously supplied Teco—an inference that would suggest a scrivener's error by Darrel Thornberry could have been made, and that a dispute of material fact exists.

The Court is also aware, as Teco points out, that Teco's designation as the "Recipient" is inconsistent with the NDA's provision that Teco's information about its customers would be "received by Vendor."  But the existence of conflicting or inconsistent terms does not by itself prove an alternate intention by the parties—rather, it merely proves that there are conflicting terms.[7]  Absent some external evidence that can clearly and convincingly show that there was a mutual mistake, the Court cannot alter the contract's express terms.

The Court finally turns to Darrel Thornberry's declaration.  According to Darrel Thornberry, he downloaded the NDA from an internet source, edited the NDA, and inadvertently named Avid as the "Discloser" and Teco as the "Recipient."  Teco also explains that the NDA describes the "Discloser" as possessing "Confidential Information" which includes, among other things, "LED Inspection Lighting Technology."  But according to Darrel Thornberry's declaration, "[a]s of December 11, 2015 Avid possessed no LED Inspection Lighting Technology."  [*See* R. 136 at 4.]

Unfortunately for Teco, even assuming the declaration's truthfulness, Mr. Thornberry's declaration is not enough to mandate reformation of the NDA.  Kentucky law on contract reformation indicates that "the testimony *and* corroborating evidence of the party seeking reformation must be *extremely strong* to overcome the specific terms of the contract."  *Spratt*,

---

[7] Conflicting terms present a question of contract interpretation, not contract reformation.  When a contract contains inconsistent terms, the Court "must examine the surrounding circumstances to determine the parties' intent."  *Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 Fed. Appx. 305, 312 (6th Cir. 2016) (citing Cent. *Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981)).  Indeed, that is exactly the task that this Court has undertaken.

9

399 S.W.2d at 293 (emphasis added). Precedent on this very issue indicates that the affidavit of a single party is not "sufficiently strong" to provide evidence of the parties' alternative intent. Rather, reformation of contractual terms has been affirmed where there is testimony by several witnesses as to the *mutual* mistake of the parties. *Compare Karrick*, 307 S.W.2d at 932 (affirming reformation of a deed based on the testimony of multiple witnesses, which included the drafting attorney and a notary public); *Wheeler v. Keeton*, 262 S.W.2d 465, 466 (Ky. 1953) (affirming reformation of a contract where all parties, including the party opposing reformation, testified that a missing provision should have been included; *and Ins. Co. of N. Am.*, 17 S.W.2d at 712 (affirming the reformation of an insurance policy, over the objection by the insuring agent, based upon the testimony of the plaintiff and three other witnesses who were present when the insurance policy was discussed), *with French v. Boyle*, 230 Ky. 619, 623-24 (Ky. 1929) (reversing the reformation of a contract despite the testimony of several witnesses about an intent to include a missing provision).

And even the evidence taken together, with the inferences in Teco's favor, is not enough to warrant contract reformation because the evidence fails to provide a factual basis showing *mutual* mistake. What the above cases demonstrate is the high hurdle a party must leap in order to be afforded contract reformation—an equitable remedy. Of course, "[t]he rule requiring 'clear and convincing proof' to reform a written instrument does not necessarily mean that there should be no contrariety in the evidence, for if it did the occasion for the application of the remedy of reformation would be rare indeed." *Karrick*, 307 S.W.2d at 932. But equity "requires that the party who seeks relief on the ground of mutual mistake shall have exercised the degree of diligence which may be fairly expected from a reasonable person." *Id*. Here, it appears that if there was a mistake it was not mutual, but rather the mistake of Teco alone. A unilateral mistake

10

is not sufficient in and of itself to authorize reformation of an NDA. Because Teco has failed to proffer clear and convincing evidence that a mutual mistake between the parties occurred, Avid's motion for summary judgment on Teco's contract reformation and breach claim must be granted.

### C

The Court next turns to Count 8 of Teco's amended complaint, which alleges that Avid tortiously interfered with Teco's prospective business relationships. For Teco to prevail, it must prove six elements: (1) a valid business relationship or its expectancy existed; (2) Avid knew about this relationship; (3) the interference was intentional; (4) the motive for the act was improper; (5) causation; and (6) special damages. *Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.,* 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003) (citing *CMI Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1080 (W.D. Ky. 1995)). In other words, Teco must show that Avid caused a third party not to perform on a contract or enter into or continue a business relationship with Teco. *See Carmichael-Lynch-Nolan Adver. Agency, Inc. v. Bennett & Assocs., Inc..* 561 S.W.2d 99, 102 (Ky. Ct. App. 1977). There must be some malicious or significantly wrong conduct on behalf of Avid. *Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988).

Here, Avid argues that Teco has failed to provide any evidence, let alone even plead any actionable factual allegations, that would support a tortious interference action. [R. 128 at 14.] Teco responds that "Avid's own actions demonstrate that the motive behind the interference was improper" and that Avid was "actively attempting to defraud the USPTO" while simultaneously threatening Teco with litigation. [R. 136 at 14.] This response is premised on Teco's claim that Avid created a "false perception that Teco was using Avid's intellectual property without permission. [*See* R. 33 at 15.] Teco relies on another exchange of emails [*see* R. 136-3], which

11

Teco argues "demonstrates the existence of a valid business relationship or expectancy, causation, and damages." [R. 136 at 14.]

Unfortunately for Teco, its response is wanting. Even construing the facts in Teco's favor, the Court finds that the email chain upon which Teco relies fails to support a factual basis for tortious interference. Although it is not clear, one could infer from the May 25 email sent by Pete Gietzen that a business relationship or expectancy thereof between Teco and Gallagher-Kaiser Corp. existed. [*See* R. 136-3 at 2.] Beyond these elements, however, Teco has not set forth any facts that would satisfy the other elements of its tortious interference claim. Further, this email chain does not provide any indication that Avid knew of Teco's relationship with Gallagher-Kaiser Corp.. Even if the Court was to assume or infer Avid's knowledge, Teco has not identified any evidence of a malicious motive or intent by Avid to interfere with Teco's business. Teco does allege that Avid's creation of a "false perception" regarding Avid's intellectual property rights is proof of Avid's improper motive. [*See* R. 33 at ¶ 124.] But Teco fails to provide any evidence that Avid even communicated to Gallagher-Kaiser Corp. or any other automotive manufacturers that Teco was possibly infringing on Avid's patent. Rather, the only communication between Avid and manufacturing customers that Teco provides is the April 25 email sent from David Ronowski to an Avid employee requesting a price quote. Teco's evidence does not create any factual scenario that could rise to the level of intent and purpose needed to establish a tortious interference claim. Accordingly, Avid's motion for summary judgment on Claim 8 must be granted.

**D**

Avid next moves for summary judgment on Claim 9 of Teco's complaint, which seeks declaratory judgment that Avid committed inequitable conduct and that any claims that issue

from the '929 patent application are unenforceable.[8]  Specifically, Teco alleges that Avid failed to name Darrel Thornberry as an inventor on Avid's prospective patent application pursuant to 37 C.F.R. 1.56(c).  This omission by Avid, if wrongful, would amount to inequitable conduct and would render its '447 patent unenforceable.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1286 (Fed. Cir. 2011).

A finding of inequitable conduct requires a showing by clear and convincing evidence that (1) the patent holder withheld material information from the USPTO, and (2) the information was withheld with intent to deceive the USPTO.  *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001).  Materiality "embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent."  *Id*. at 1274.  Failing to name all the true inventors to the USPTO is material.  *See Frank's Casing Crew & Rental Tools v. PMR Techs.*, 292 F.3d 1363, 1376 (Fed. Cir. 2002).  The intent element is "drawn from facts, with the collection of inferences permitting a confident judgment that deceit has occurred."  *GFI, Inc.*, 265 F.3d at 1274.  Materiality of an omission does not presume intent.  *Id*.

Because inequitable conduct pertains to patent law, determining whether inequitable conduct has been adequately pled is a question of Federal Circuit law.  *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007).  The Federal Circuit has held that inequitable conduct must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).  To plead the circumstances of inequitable

---

[8] The Court is aware that Teco, as an affirmative defense to Avid's infringement claims, also challenges the validity of Avid's patent on the grounds that the accused instrumentality is actually prior art.  This alternative theory of patent invalidity is not addressed here.

conduct with the requisite particularity, the pleading must identify the specific "who, what, when, where, and how" of the material omission. *Id*. at 1328. In other words, the pleading of inequitable conduct must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the USPTO. *Id*. at 1328-29.

Here, Avid evinces doubts that Teco has met the heightened pleading requirement for an inequitable conduct claim. Avid argues that Teco has offered no proof that suggests Avid had any intent to deceive the USPTO. [R. 128 at 16.] Avid also argues that Teco has offered no support for its claim that Darrel Thornbury was an inventor. *Id*. Teco counters by arguing that Avid's deceitful intent can be inferred from circumstantial evidence. [R. 136 at 10-11.] According to Teco, Avid's intentional omission of Teco's 2015 Light Tunnel in Avid's disclosures, which Teco argues should have been identified as prior art, is circumstantial evidence that Avid intentionally "defrauded" the USPTO. *Id*. at 10-12.

Despite any muddied waters, the Court finds that Teco has failed to meet its burden at the pleading stage. First, assuming that there was a material omission, Teco's amended complaint fails to identify the "who" of the material omission. Teco's amended complaint claims that Avid filed the '929 patent application, which named four specific individuals as inventors. [*See* R. 33 at ¶ 39.] But nowhere in Teco's amended complaint does it name a specific person from Avid who filed the '929 application. 37 C.F.R. §1.56(a) imposes "a duty of candor and good faith in dealing with the [USPTO] . . . " upon "[e]ach individual associated with the filing and prosecution of a patent application."[9] Guided by this regulatory language, the Federal Circuit

---

[9] Teco's Amended Complaint alleges that Avid's duty to disclose all inventors to the USPTO derives from 37 C.F.R. §1.56(c). [R. 33 at ¶ 132.] Section 1.56(c) does not, however, impose any affirmative duties. Rather, it defines

14

makes it clear that a pleading must name a *specific individual* associated with the filing or prosecution of the patent who knew of the material information and deliberately withheld or misrepresented it. *See Exergen Corp.*, 575 F.3d at 1329. Because Teco's amended complaint fails to identify any specific individual who knowingly withheld material information with an intent to deceive the USPTO, its pleading must be rendered inadequate.

Moreover, Teco's amended complaint is deficient of any facts that give rise to a reasonable inference of scienter. Teco alleges that Avid intentionally excluded Darrel Thornberry from the list of inventors on the '929 application. But Teco's pleading provides no factual basis to infer that any specific individual owing the duty of disclosure actually knew of Darrel Thornberry's supposed contributions to the patented LED Paint Inspection Lighting System, or that he should have been named as an inventor. Nor does Teco provide any factual basis from which this Court can infer that any specific individual owing a duty of candor and good faith intended to deceive the USPTO. Teco's bare boned allegations stating that Darrel Thornberry should have been named but was not, and that Avid's omission was intentional, are not enough to reasonably infer that there was a particular person who (1) knew that Darrel Thornberry's omission from the '929 application was material, and (2) withheld this information with the specific intention to deceive the USPTO. Because Teco failed to plead with particularity pursuant to Rule 9(b), its inequitable conduct claim must fail. Consequently, Avid's motion for summary judgment on Count 9 of Teco's amended complaint must be granted.

### III

Now that Teco's claims have been disposed of, the only remaining claims in this matter are Avid's counterclaims against Teco. The Court is aware that Teco's Motion for Partial

---

which individuals are included as "Individuals associated with the filing or prosecution of a patent application within the meaning of [37 C.F.R. § 1.56]." *See* 37 C.F.R. § 1.56(c).

Summary Judgment on Avid's counterclaim is still pending.  So as not to conflate the issues or confuse the parties, the Court will save its analysis of Teco's pending motion for a separate Order.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Avid Labs, LLC's Motion for Summary Judgment **[R. 128]** is **GRANTED**; and

2. Judgment in favor of Avid Labs, LLC on Counts 5, 8, and 9 of Tecossl, Inc.'s Amended Complaint **SHALL** be entered promptly.

This the 15th day of February 2024.

Gregory F. Van Tatenhove
United States District Judge